## FEENBERG SUPPLY CO. v. PIERCE.

No. 28271. June 6, 1939.

Rehearing Denied July 11, 1939.

Application for Leave to File Second Petition for Rehearing Denied Nov. 14, 1939.

Ames, Cochran, Monnet, Hayes & Ames, for plaintiff in error.

Butler, Brown & Rinehart, for defendant in error.

CORN, J. This action was commenced in the district court of Oklahoma county by Jesse Edward Pierce, hereinafter referred to as plaintiff, against Feenberg Supply Company, a corporation, hereinafter referred to as defendant, to recover the sum of $26,456.25 as damages on account of personal injuries sustained as the result of the alleged negligence of defendant in the operation of its truck upon a public highway. The jury returned a verdict in favor of the plaintiff and assessed his recovery at the sum of $15,300.

The contentions of the defendant are presented under the following two propositions:

"1. The court committed reversible error in permitting the introduction of testimony, over the defendant's objection, respecting the condition of the brakes of the defendant's truck, and in so instructing the jury as to permit the imposition of liability on defendant based on a finding of defective brakes.

"2. The verdict of the jury was so grossly excessive that under the evidence it could have resulted only from passion and prejudice."

The trial court permitted the plaintiff, over the objection of defendant, to testify to the details of a certain conversation had by him with the driver of the defendant's truck immediately following the accident on the theory that the statements made by the truck driver were a part of the res gestae; the testimony so given and objected to being as follows:

"Q. Tell us about it, tell us what took place. A. It knocked me down, it knocked me about 40 feet, and this truck driver got out and said, 'What in the world is the matter?' I said, 'What is the matter with you, couldn't you stop?' He said, 'No, sir.' Mr. Haynes: Just a minute, please. We object as incompetent, irrelevant, and immaterial and not binding on this defendant, what the truck driver may have said under the circumstances. The Court: It will be overruled with an exception. Q. Go ahead and answer, tell about it, Edward. A. He said, 'Well, I didn't have no brakes.' I said, 'Well, why didn't you sound the horn?' He said, 'I have no horn.'"

It is urged by the defendant that these declarations are wanting in the essential spontaneity and instinctiveness to characterize them as a part of the transaction which the declarant thereby sought to explain, and numerous authorities are cited by both parties to exemplify the proper application of the rule. The facts and circumstances of each particular case must determine the application of the rule. It is sometimes very difficult for the trial court to determine whether the declaration is genuinely spontaneous and instinctive, or not even though it is made contemporaneously with the happening of the event which the declaration explains, or about which it is made, and necessarily the trial court is given a wide discretion in admitting or excluding such testimony. Standard Accident Insurance Co. v. Baker, 145 Okla. 100, 291 P. 962. The above declarations were made at the scene and under the excitement of a frightful accident in which the declarant was a participant, and we are of the opinion that they come within the rule and are a part of the res gestae, and that the court did not commit error in admitting the same in evidence.

It is urged by defendant in error that the case of Eastern Torpedo of Ohio Company v. Shelts, 121 Okla. 129, 247 P. 974, is controlling. But it is to be noted that in that case the statement was in response to a query after the witness had walked a distance of 100 to 300 feet from the time of the explosion to the time of making the statement, and the statement was an expression of an opinion rather than a statement of fact. In the instant case the plaintiff was still under the truck at the time of the alleged statement and only a few seconds had elapsed since the collision, and the statement purported to be a statement of facts spontaneously made in the excitement caused by the collision. We believe the facts herein distinguish the case from the case relied upon.

However, we are unable to attach much importance to this testimony as influencing the verdict in view of rebuttal testimony showing that the brakes had been relined and adjusted only 30 days before the accident and that the brakes were thrown out of adjustment just before the collision when the truck side-swiped the rail of a bridge, which threw one wheel of the truck out of alignment and rendered the brakes ineffective. The truck driver testified that after he hit the bridge the brakes would not hold. He testified: "I told him that my brakes wouldn't stop the car quick enough, that is what I told him." We think the instructions of the court fairly covered the issues raised in the pleadings, and were properly given under the evidence in the case. Therefore, there appears no sufficient reason for believing that the minds of the jury were prejudiced against the defendant because of the allegations and the testimony of the plaintiff that the defendant operated the truck with defective brakes upon the public highway.

The defendant further contends that the verdict of the jury was so grossly excessive that under the evidence it could have resulted only from passion and prejudice.

The testimony showed that the plaintiff suffered a pecuniary loss of approximately $4,650, leaving the sum of $10,450 attributable to concious pain and suffering. It is the latter portion of the verdict which the defendant contends is excessive. It is contended that the amount apparently allowed for pain and suffering is out of proportion to that allowed to compensate for the pecuniary loss. The plaintiff was a farm laborer and his earning capacity was shown to be $30 per month, and upon that basis his compensation for the disability suffered was estimated. The extent of the pain and suffering may be determined from the nature and extent of the physical injury, but we cannot see that the compensation for pain and suffering bears any relation to the pecuniary loss based upon earning capacity. A day laborer earning one dollar per day undoubtedly would suffer as much pain as a high salaried executive would suffer from the same injury.

The testimony shows that the claimant was taken to the hospital in a very serious condition. He was not only suffering from a broken leg, but also had a grave chest condition, developing into incipient pneumonia. The testimony shows that this condition itself caused great pain for a period of approximately one month. The treatment for the fractured bone of the injured leg required that a hole be bored through said leg and a wire fastened through the hole and an 18-pound weight was suspended by the wire to hold the limb in position while the bone grew back together. The plaintiff was compelled to bear this ordeal for a period in excess of six weeks. Next a heavy cast, completely enclosing a part of his body and all the injured member, was put on him, and this was kept on for several months. When the cast was removed and the patient was thought to be on the road to recovery, the leg began to bow. Then he returned to the hospital and his leg was again placed in a cast. After the cast was removed he was compelled to wear a leg brace. In addition to the pain suffered in the leg, the plaintiff suffered from a hernia, and it was shown at the trial that he would continue to suffer from it until he received the necessary operation. The testimony showed that an operation of that kind involves some danger of death, and this danger would certainly increase his suffering. In view of the foregoing evidence we would hesitate to say that the verdict was excessive.

The rule which this court has consistently followed with respect to its right to interfere with a jury's verdict is laid down in Sand Springs Park v. Schrader, 82 Okla. 244, 198 P. 983, as follows:

"Where the verdict is not so excessive as to raise a presumption that the jury was actuated by prejudice and passion in rendering the same, and in the absence of any specific proofs of passion and prejudice in rendering the judgment, and where the facts have been submitted to the jury under proper instructions, it is left to the discretion of the jury as to the amount of the recovery."

Finding no reversible error in the record, the judgment of the trial court is affirmed.

RILEY, OSBORN, HURST, and DAVISON, JJ., concur. WELCH, V. C. J., dissents. BAYLESS, C. J., and GIBSON and DANNER, JJ., absent.

WELCH, V. C. J. (dissenting). I cannot concur in the majority opinion. I think the dialogue between plaintiff and the truck driver was not admissible in evidence. See Eastern Torpedo Co. v. Shelts, 121 Okla. 129, 247 P. 974; Bernard v. Grand Rapids Paper Box Co. (Mich.) 136 N. W. 374; Tuccio v. Smith (Miss.) 118 So. 195.

I take it this evidence was offered as a

part of the proof necessary to establish liability, the burden being on plaintiff to prove liability by competent evidence. This evidence in my judgment was not admissible and upon its face was highly prejudicial. It tended definitely to show almost culpable negligence, at least a most aggravated case of failure of defendant to use due care in equipping its trucks for travel on the highways.

I agree and insist that ample compensation be made for personal injury where liability is either conceded or shown. I believe that in this case liability could be shown and the amount fairly determined without resort to this inadmissible and highly prejudicial evidence. It was quite material to show how the truck was equipped and operated, but here the case was permitted to turn to a large extent on what the truck driver did or not say about the equipment, when he was interrogated about it. I think on its face this evidence does not meet the test to be admissible as a part of the "res gestae." I would therefore feel forced to award a new trial.