SAND SPRINGS RAILWAY CO. et al. v. PIGGEE.

No. 31869. Nov. 20, 1945.

163 P. 2d 545.

Doerner, Rinehart & Stuart, of Tulsa, for plaintiffs in error.

B. C. Franklin, of Tulsa, for defendant in error.

PER CURIAM. This is an appeal from a judgment rendered on the verdict of the jury in the court of common pleas of Tulsa county in favor of Myrtle Piggee and against defendants, Sand Springs Railway Company and J. D. Cremer, on account of personal injuries suffered as the result of a collision between a motor bus of the Tulsa City Lines, on which plaintiff was a passenger, and an interurban car of defendant Sand Springs Railway Company which occurred at the intersection of North Greenwood and East Easton streets, city of Tulsa.

The petition was originally filed against these defendants and the Tulsa City Lines and Joe Watson, who was the driver of the bus at the time of the collision. Plaintiff in her petition alleged that the injury occurred because of the joint and concurrent negligence of all defendants. As to the defendants Sand Springs Railway Company and J. D. Cremer, it is alleged that they were negligent in that the interurban car was not properly equipped and had it been so equipped the operator thereof, by the exercise of reasonable care, could have stopped the car in time to have avoided the collision.

Defendants, for reversal, rely upon the following assignments: (1) error of the trial court in overruling their motion to strike the case from the assignment; (2) error in admitting, over their objection, certain hearsay evidence; (3) error of the court in overruling the objection to the introduction of evidence and in overruling their motion for judgment on the pleadings; (4) error in overruling their motion for directed verdict.

The record discloses that the trial court permitted the plaintiff to file a reply out of time and such reply was filed only four days before the day of trial. The motion to strike the case from the assignment was presented on the theory that the issues had not been made up ten days before the day of trial, and that they were therefore entitled as a matter of right to have the same stricken (12 O. S. 1941 § 666). Plaintiff's petition was filed April 1, 1943. A demurrer was filed thereto by defendants which was overruled, and separate answers of the defendants were filed June 1, 1943.

The answers consisted of general denials, plea of contributory negligence and unavoidable accident. It is the theory of the defendants that their answers pleaded an affirmative defense, and that a reply was therefore necessary and the case could not be assigned for trial until ten days after the reply was filed. Assuming that defendants are correct in their contention that the filing of the reply was necessary, the failure to file such a reply in time did not necessarily entitle them as a matter of right to have the case stricken. The reply consisted of a general denial. The issues were completely joined upon the filing of defendants' answers; the filing of the reply in no manner changed the issues as they were joined upon the filing of the petition and answers. There was therefore no error in overruling the motion. Derry et al. v. State ex rel. Walcott, 109 Okla. 244, 235 P. 158; Texas Co. v. Yell, 128 Okla. 102, 261 P. 549.

The trial court, over the objection of defendants, permitted the witness Watson, who was the driver of the motorbus at the time of the collision, to testify as to a statement made by the defendant Cremer, the driver of the streetcar, as to the cause of the accident. It is contended that this evidence was improperly admitted and the evidence was therefore insufficient upon which to submit the case to the jury. It is disclosed that the collision occurred at the intersection of North Greenwood and East Easton streets, at which point plaintiff entered the bus. Immediately prior to the time the bus stopped at this point it was traveling south on Greenwood

street until it arrived at East Easton, it then turned to the west and stopped on East Easton street at the usual bus stopping point. In making the stop the rear end of the bus remained on the streetcar tracks. The interurban car, which was also being driven in a southerly direction, struck the bus in the rear, the impact of which moved the bus forward for a distance of approximately four feet causing the plaintiff to fall to the floor, from which fall she suffered injuries about her head and side. The evidence discloses that the terrain upon which the track was laid was level, and that objects could be seen on the track for a great distance; that defendant bus company was in the habit and it was its custom for a number of years to stop its bus at the point at which the collision occurred and that many times in so doing the rear end of the bus would remain on the street railway tracks; that this was well known to defendant company and the driver of the car; that there was nothing to obstruct the view of the driver. It is plaintiff's theory that under these circumstances defendants, being charged with the knowledge of this custom of the Tulsa Company, upon the exercise of due care could and should have discovered the position of the bus in time to have avoided the accident; that if the car had been properly equipped, it could have been stopped in time to have avoided the accident. She further contended that the failure of the driver of the streetcar to so stop was due to faulty brakes, and attempted to establish the same by the testimony of Mr. Watson that defendant Cremer, the driver of the car, so stated to him. In order to lay a proper foundation for such evidence plaintiff established by the witness that immediately after the accident he called an ambulance; that upon its arrival plaintiff and other injured passengers were placed therein. The following question was then asked the witness:

"Did the driver of the Sand Springs car, the motorman, have anything to say *at that time*? A. I asked him what was the trouble and he said his air failed him. That is what he told me, he said his air failed."

This evidence was admitted over the objection and exception of the defendants. It was admitted on the theory that it was part of the res gestae.

It is sometimes difficult to determine as to whether certain statements which would be otherwise inadmissible under the hearsay rule are admissible as part of res gestae. It may be said generally that in order for such statements to be admissible they must be made at or near the time of the occurrence of the accident, they must have been spontaneously made, they must have been provoked or influenced by the happening of the accident itself so as to become a part thereof; if made in relating a past occurrence or event, they are inadmissible. Missouri, O. & G. R. Co. v. Adams, 52 Okla. 557, 153 P. 200; Chicago, R. I. & P. R. Co. v. Foltz, 54 Okla. 556, 154 P. 519; Schaff v. Coyle, 121 Okla. 228, 249 P. 947; Sears, Roebuck & Co. v. Robinson, 183 Okla. 253, 80 P. 2d 938.

We have, however, on different occasions said that the question of admissibility of such evidence must be determined by the facts and circumstances of each case, and should in a great measure be left to the determination of the trial court. Standard Accident Ins. Co. v. Baker, 145 Okla. 100, 291 P. 962; Travelers Ins. Co. v. Minton, 181 Okla. 306, 73 P. 2d 422; Feenberg Supply Co. v. Pierce, 185 Okla. 662, 95 P. 2d 640; Henry Chevrolet Co. v. Taylor, 188 Okla. 380, 108 P. 2d 1024. In the case of Feenberg Supply Co. v. Pierce, supra, in an action brought by a pedestrian to recover damages for injuries sustained from being struck by a truck, we held that a statement made by the driver of the truck immediately after the accident, upon inquiry propounded by plaintiff, that he could not stop the truck and that he did not sound the horn for the reason that he had neither brakes nor horn, was admissible as part of the res gestae. In the case of Henry Chevrolet Co. v.

Taylor, supra, we held the following statement admissible as part of the res gestae:

"Defendant objects to a statement by the witness Stephens, admitted in evidence over its objection. The statement is as follows: 'Well, when I drove in with the ambulance the boy was lying on the floor and I asked 'My God, what happened?' and he said he let the generator go too long without cleaning it and it blew up and killed Ollie."

In that case it was further said:

"It is sufficient to say that admission of such statements is justified by the spontaneous nature of the statement, which is in itself a sufficient guarantee of the trustworthiness of such declarations to render them admissible, if they are made under the immediate influence of the occurrence to which they relate, and it is not necessary that the declarations be so strictly contemporaneous with the occurrence to which they relate as to be admissible under the so-called 'verbal act' doctrine, the element of time being important only for the purpose of determining whether the declaration was made when the speaker was under the stress of nervous excitement as a result of the occurrence to the extent that the reflective faculties were stilled and the utterance therefore a sincere expression of his actual impressions and belief. See Wigmore on Evidence (2d Ed.) sec. 1750. This has been the tenor of numerous Oklahoma decisions upon the question. See Gibson Oil Co. et al. v. Westbrooke, 160 Okla. 26, 16 P. 2d 129; Feenberg Supply Co. v. Pierce, 185 Okla. 662, 95 P. 2d 640; Shawnee-Tecumseh Traction Co. v. Henry, 110 Okla. 160, 236 P. 894; Herring v. Hood, 55 Okla. 737, 155 P. 253."

And in the case of Travelers Insurance Co. v. Minton, supra, speaking on this question, we said:

"The question is, Were these statements of the injured party such that under all the surrounding circumstances they may be said to constitute a part of the accident itself?

"Res gestae consists of all the things done in relation to, and as a part of, a certain event. A statement is a portion of the event, dependent entirely upon whether it was provoked spontaneously by the event itself. If subsequently narrated, without the characteristic of spontaneity, and calculated merely to inform, such statement is not a part of the res gestae."

The statement in this case was made near the time at which the accident occurred; it was made at the scene of the accident. It was made at a time when tension and excitement due to the accident was still high. Taking into consideration all of the circumstances under which the statement was made, we think it can safely be stated that it was spontaneously made, that it was provoked and influenced by the accident itself, and was therefore a part thereof. At least it cannot be said that the trial court abused its discretion in so holding and admitting the statement in evidence.

Defendants at the commencement of the trial objected to the introduction of any evidence and orally moved for judgment on the pleadings on the ground that the dismissal of the case by plaintiff with prejudice as against the City Lines and Watson was an adjudication of the case on its merits, and now contend that such dismissal operated as a bar to the prosecution of the action against them, and the trial court therefore erred in overruling their objection and motion. It may be true as contended that the dismissal of a case with prejudice against one joint tort-feasor might under some circumstances operate as a bar to the prosecution of the case against others. We do not, however, find it necessary to pass upon that question in this case. This question was not properly presented to the trial court. This is especially true under the state of the record as it existed at the time the ruling was made. There is contained in plaintiff's petition no allegation that can be construed as tending to create a bar to the prosecution of the action against these defendants. They did not in their answers plead the dismissal as a bar to the prosecution of the action against them, nor did they request permission to amend their answers so as to plead such defense. The

record discloses that upon the dismissal having been filed and before commencement of the trial, defendants, over the objection of plaintiff, were granted permission to conduct an inquiry for the purpose of ascertaining the amount plaintiff received upon such dismissal. Counsel for defendants in response to the objection stated that they desired to make such inquiry in order to ascertain the amount paid in order that they might plead the same in mitigation of damages. After ascertaining the amount paid they requested permission of the trial court to amend their answers so as to plead the amount so paid in mitigation of damages. At the suggestion of counsel for plaintiff the trial court treated the answers as so amended and the case went to trial. The trial court and all parties to the action thereafter treated the answers as so amended.

In its instructions the court told the jury that plaintiff, in consideration of payment of $150, had dismissed the cause as to the City Lines and Watson, and that in the event they found for plaintiff they should ascertain the amount of her recovery and deduct therefrom the sum of $150, the amount paid to plaintiff upon such dismissal. Defendants took no exceptions to this instruction. It will thus be seen that the case was submitted to the jury upon the very theory suggested by defendants. They cannot now be heard to say that the court committed error in so doing.

This issue was not properly presented to the trial court and it cannot therefore be presented to this court on appeal.

The court committed no error in overruling the motion for a directed verdict.

The judgment is affirmed.

HURST, V.C.J., and RILEY, OSBORN, BAYLESS, and CORN, JJ., concur. GIBson, C.J., and WELCH, J., concur in conclusion.